IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

_____

DIRECTV, INC.,

     Plaintiff,

v.                                               Civil No. 04-540 WJ/RHS

BRIAN KOWALSKI,

     Defendant.

## MEMORANDUM OPINION AND ORDER ON DEFAULT DAMAGES

THIS MATTER comes before the Court pursuant to Plaintiff's Motion for Entry of Damages Based on Written Submissions [Docket No. 11] and Plaintiff's Motion for Entry of Default Judgment Against Brian Kowalski [Docket No. 4].  Having reviewed the motions and submissions, I conclude that damages may be awarded based on the evidentiary submissions and without a full evidentiary hearing.  Having considered the exhibits and the well-pleaded allegations in Plaintiff's Complaint, I make the following findings of fact and conclusions of law with respect to damages.

**PROCEDURAL BACKGROUND**

Plaintiff DIRECTV filed its Complaint in this matter on May 14, 2004.  A return of service filed on June 3, 2004 indicates that Defendant Brian Kowalski was served personally on May 23, 2004.  DIRECTV filed a motion for default judgment on September 22, 2004 [Docket No. 4].  By Memorandum Opinion and Order filed on March 28, 2005 [Docket No. 9], the Court found that Defendant had been properly served in this action and had failed to defend or otherwise appear in the action.  Therefore, the Court entered default judgment on the issue of liability.  The

Court concluded that damages in this case were not liquidated or capable of mathematical calculation and that the Court was required to take evidence and exercise its discretion in awarding damages. Accordingly, the Court reserved ruling on the motion for default judgment to the extent DIRECTV sought damages and injunctive relief. See Docket No. 9.

In response to the Court's Memorandum Opinion and Order, DIRECTV submitted the instant Motion for Entry of Damages Based on Written Submissions. Attached to the motion is detailed evidence in support of its motion for default judgment on damages. Many courts have recognized that a hearing to award damages on default is not necessary if the record contains detailed evidence on which a court may make a determination of damages. See e.g., Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997); James v. Frame, 6 F.3d 307, 309-11 (5th Cir. 1993); United Artists Corp. v. Freeman, 605 F.2d 854, 857 (5th Cir. 1979); Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc., 722 F.2d 1319, 1323 (7th Cir. 1983); Adolph Coors Co. v. Movement Against Racism and the Klan, 777 F.2d 1538, 1543-44 (11th Cir. 1985). Given the detailed evidence submitted by DIRECTV on the issue of damages, the Court will proceed to determine damages on the written submissions.

**FINDINGS OF FACT**

By virtue of Defendant's default, the Court accepts as true all of the well-pleaded factual allegations in DIRECTV's Complaint. Gervais v. O'Connell, Harris & Assoc., Inc., 297 F.Supp.2d 435, 438 (D.Conn. 2003). The Complaint alleges the following facts that are accepted as true.

1.      DIRECTV is in the business of selling satellite television programming to subscribers who normally pay for the television programming on a monthly basis. DIRECTV

2

relays digital signals from within the United States to satellites in orbit around Earth.  The satellites then re-broadcast the signals back to Earth, and the signals are picked up by fixed outdoor satellite dishes designed to capture these signals.  The satellite dishes are connected by cable to indoor satellite receivers which are, in turn, connected by cable to a television monitor. In order to prevent nonsubscribers from receiving its programming without payment, DIRECTV encrypts its satellite signals so that the signals cannot be used until they are unscrambled.  The satellite receiver located between the satellite dish and the television monitor  is the component that makes unscrambling possible.  Each satellite receiver contains a removable Access Card containing a computer chip that unscrambles the satellite signal.  These Access Cards are programmable to permit the unscrambling of various satellite signals from DIRECTV.

2.     Once a subscriber pays a subscription fee, DIRECTV is able to electronically direct the Access Card installed in the subscriber's satellite receiver to unscramble those portions of the programming that have been paid for.  The Access Card allows DIRECTV to provide many levels of programming services depending on the package purchased by the subscriber.

3.     Despite the encryption technology used by DIRECTV, devices and equipment have been developed to surreptitiously pirate DIRECTV's satellite signals by altering the information in the computer chips within the Access Cards.  The use of pirate access devices permits a user to access all of DIRECTV's programming without payment of a subscription fee.

4.     During the last few years, DIRECTV conducted several raids on businesses marketing and selling pirate access devices that are primarily designed to assist in the interception of DIRECTV satellite communications.  On or about November 2001, DIRECTV executed a Writ of Seizure against Li Sang and his business known as Digital Source Solutions (DSS).  DSS

3

sold a distributed pirate access devices.  The records obtained in the raid evidenced Defendant's purchase of several pirate access devices.

5.      On or about August 9, 2001, Defendant purchased a device invoiced as an "Atomic Multi-Purpose."  The device is designed to be used as an unlooper, a loader and a programmer.  The loader component of the device allows the surreptitious interception of DIRECTV Satellite Programming, providing Defendant the means to access DIRECTV programming without payment.  The unlooper is designed to repair Access Cards that have been rendered unusable by illegitimate use and is specifically designed for use with certain software further permitting the illegal programming of valid DIRECTV access devices.  The programmer is primarily designed to permit the illegal programming of valid DIRECTV Access Cards for the sole purpose of obtaining access to DIRECTV Satellite Programming without paying DIRECTV. The device was shipped to Defendant in Rio Rancho, New Mexico.

6.      On or about November 6, 2001, Defendant purchased two printed circuit board devices.  Each device was invoiced as an "Atomic Bootloader."  Bootloaders are designed to allow the surreptitious interception of DIRECTV Satellite Programming.  These devices were shipped to Defendant at his address in Rio Rancho, New Mexico.

7.      Defendant intentionally intercepted or procured other persons to intercept DIRECTV's satellite signals and used those satellite signals.

8.      Defendant knowingly  programmed and reprogrammed DIRECTV Access Cards and inserted these Access Cards into DIRECTV satellite receivers in order to surreptitiously intercept DIRECTV Satellite Programming.

4

In addition to the allegations of the Complaint, the Court makes the following findings of fact with respect to the issue of damages based on the evidence submitted by DIRECTV:

9.      The sole purpose of a bootloader such as those purchased by Defendant is to facilitate interception of DIRECTV's broadcasts without paying for them.

10.     The sole purpose of an unlooper such as that purchased by Defendant is to allow its user to defeat DIRECTV's security features to allow the user to access DIRECTV's channels for which the user has not paid.

11.     One method used by DIRECTV to prevent the surreptitious interception of its satellite programming is to impose security features into the Access Cards and replace its subscriber's Access Cards with new Access Cards containing the latest security features. DIRECTV replaced the "Period 2" Access Card with the "Period 3" Access Card, and this transition was completed in October 2002. DIRECTV replaced the "Period 3" Access Card with the "Period 4" Access Card, and this transition was completed in April 2004.

12.     The Atomic Bootloaders purchased by Defendant in November 2001 were rendered useless by the transition in October 2002 from the "Period 2" to the "Period 3" Access Card. The Atomic Multi-Purpose purchased by Defendant in August 2001 was rendered useless by the transition in April 2004 from the "Period 3" to the "Period 4" Access Card. Thus, Defendant had functional pirate access devices from August 2001 through April 2004, a period of 33 months.

13.     With access to free DIRECTV programming, it is reasonable to infer that Defendant had viewing habits resembling those of the top ten percent (10%) of DIRECTV subscribers who purchase or subscribe to significantly more pay-per-view and "premium" channels than the average DIRECTV subscriber.

14.     The average monthly cost of a subscription for the top ten percent (10%) of DIRECTV subscribers is $229.00.

15.     It is reasonable to infer that Defendant was an end-user who obtained and used pirate access devices for 33 months to surreptitiously intercept for personal use in a family dwelling monthly DIRECTV programming worth $229.00 for a total value of $7,557.00.

16.     It is not reasonable to infer, based on the above findings and the well-pleaded allegations in the Complaint, that Defendant was a manufacturer, assembler, importer, exporter, seller, or distributor of pirate access devices.

17.     Any finding of fact that is more appropriately a conclusion of law shall be deemed a conclusion of law. Any conclusion of law that is more appropriately a finding of fact shall be deemed a finding of fact.

**ANALYSIS OF DAMAGES**

While a defendant, through his default, admits all well-pleaded factual allegations in a Complaint, a defendant cannot be said to admit conclusions of law through default.  DIRECTV, Inc. v. Huynh, 318 F.Supp.2d 1122, 1127 (M.D. Ala. 2004) (quoting Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)); Evanauskas v. Strumpf, No. 00-CV-1106, 2001 U.S. Dist. LEXIS 14326, *4 (D.Conn. June 27, 2001).  Therefore, before a Court may enter judgment on damages, it must determine whether a plaintiff's factual allegations are sufficient to state a claim for relief on the causes of action for which the plaintiff seeks damages.  Evanauskas, 2001 U.S. Dist. LEXIS 14326 *4.

I.     DAMAGES FOR COUNT 1 UNDER THE CABLE COMMUNICATIONS POLICY ACT, 47 U.S.C. § 605(e)(3)(C).

DIRECTV's first cause of action in Count 1 of the Complaint alleges damages for violations of the Cable Communications Policy Act, 47 U.S.C. § 605(e)(3)(C).  Section

605(e)(3)(C) concerns the method of calculating damages for violations of Section 605(a).
Section 605(a) makes it a prohibited practice for an unauthorized person to receive or assist
another unauthorized person to receive satellite transmissions of the type offered by DIRECTV.
See Huynh, 318 F.Supp.2d at 1128.  In the above findings of fact, the Court has determined that
Defendant surreptitiously received DIRECTV satellite programming.  Accordingly, DIRECTV
has stated a claim for a violation of Section 605(a) and is entitled to damages under Section
605(e)(3)(C).

Section 605(e)(3)(C) specifies that damages shall be computed, at the election of the
aggrieved party, as either the actual damages suffered as the result of the violation or as statutory
damages in a sum of not less than $1000 or more than $10,000 for each violation as the court
considers just.

The Court has already determined that the value of the services pirated by Defendant is
$7,557.00.  Thus, the Court determines that actual damages under Section 605(e)(3)(C) are
$7,557.00.

The language of Section 605(e)(3)(C) regarding statutory damages has been interpreted as
granting discretion to the courts to decide the amount to award based on the particular
circumstances of the case.  See e.g., DIRECTV, Inc. v. Kaas, 294 F.Supp.2d 1044, 1047-48
(N.D. Iowa 2003); DIRECTV, Inc. v. Griffin, 290 F.Supp.2d 1340, 1344 (M.D. Fla. 2003).
Factors to be considered in determining the appropriate amount of damages for a violation of
Section 605(a) include:

> (1) whether the defendant profited as a result of his violation; (2) whether the
> defendant assisted or induced others in violating the statute; (3) whether the
> defendant's violation was willful or flagrant; (4) whether the damage award will be
> sufficient to deter similar conduct; and (5) whether the damage award is
> comparable to awards in similar cases.  The burden is on DIRECT to provide
> justification for why damages in excess of the minimum should be awarded.

Huynh, 318 F.Supp.2d at 1131-32.

DIRECTV has not offered evidence that Defendant engaged in conduct beyond purchasing pirate access devices. From these purchases, the Court has inferred that Defendant used the devices to intercept DIRECTV satellite programming. However, the Court cannot infer more than that from the evidence offered in this case. See e.g., DIRECTV, Inc. v. Molina, Civil No. 03-0053 MCA/ACT (D.N.M. August 31, 2004) (unpublished Memorandum Opinion and Order, Docket No. 105). I also conclude that the amount of actual damages in this case, $7,557.00, is sufficient to deter similar conduct and is comparable to awards in similar cases. See Id. (awarding $4,809.00 in actual damages based on $229.00 a month for 21 months for a violation of Section 605(a)).

The Court determines that statutory damages in the same amount are just. Accordingly, the Court determines that statutory damages of $5775.00 is just under the circumstances of this case, and DIRECTV's damages under Section 605(e)(3)(C) are $7,557.00 computed as actual or statutory damages.

II.     DAMAGES FOR COUNT 2 UNDER 18 U.S.C. § 2511

Under 18 U.S.C. § 2511, it is unlawful for a person to intercept any wire, oral or electronic communication. As the Court's findings of fact reflect, DIRECTV has proven that Defendant intercepted a wire communication in violation of § 2511. Section 2520 permits a civil action to enforce § 2511 and specifies that damages are whichever is the greater of (1) actual damages; or (2) the greater of $100 per day or $10,000.

In order to determine which of the actual or statutory damages is greater, the Court will first determine the actual damages. The Court concludes that the actual damages for the violation

of § 2511 are the same as those for the violation of § 605(a).  Accordingly, the actual damages for the violation of § 2511 are $7,557.00.

With regard to statutory damages, the Court has discretion to award the full amount of statutory damages authorized under § 2520(c)(2) or no statutory damages at all, but has no discretion to award statutory damages in an amount falling between these two choices. DIRECTV, Inc. v. Brown, 371 F.3d 814, 817-19 (11th Cir. 2004).  In cases such as this one in which the evidence shows only that Defendant unlawfully obtained DIRECTV's programming for private viewing, a plaintiff is fully compensated by an award of actual damages, and the award of statutory damages "could easily be viewed as gratuitous."  Brown, 371 F.3d at 819; see also, DIRECTV, Inc., v. Dimas, Civil No. 04-193 JH/WDS (D.N.M. Feb. 9, 2005) (unpublished Memorandum Opinion and Order, Docket No. 20).  Many courts have declined to award statutory damages for violations of 18 U.S.C. § 2511(1)(a).  See Huynh, 318 F.Supp.2d at 435; DIRECTV v. Kaas, 294 F.Supp.2d 1044, 1049 (N.D. Iowa 2003); DIRECTV v. Perrier, No. 03-CV-400S, 2004 WL 941641 at *1 (W.D.N.Y. Mar. 15, 2004); DIRECTV v. Getchel, No. 3:03CV2073(GLG), 2004 WL 1202717 at *4 (D. Conn. May 26, 2004).  I find these authorities persuasive and decline to award statutory damages under Section 2520 for Defendant's violation of 18 U.S.C. § 2511.  Because DIRECTV's actual damages exceed the statutory damages, DIRECTV is entitled to an award of actual damages in the amount of $7,557.00.  However, these damages are duplicative of those awarded for the violation of Section 605(a).  See DIRECTV, Inc. v. Hanson, No. Civ.A.04-00390-JF, 2005 WL 44525 at *1 (E.D. Pa. Jan. 7, 2005) (noting that duplicate damages should not be awarded for conduct that violates both Section 605(a) and Section 2511).  Accordingly, DIRECTV's award of damages under 47 U.S.C § 605(e)(3)(C) and 18 U.S.C. § 2520 is a total of $7,557.00.

III.    DAMAGES FOR COUNT 3 UNDER 47 U.S.C. § 605(e)(4).

DIRECTV requests damages for a violation of Section 605(e)(4).  As previously noted, a

defendant does not admit legal conclusions through his default.  Huynh, 318 F.Supp.2d at 1127.

Section 605(e)(4) prohibits any person from manufacturing, assembling, modifying, importing,

exporting, selling or distributing any electronic, mechanical or other device primarily used in the

unauthorized decryption of satellite cable programming.  Section 605(e)(4) is targeted toward

upstream manufacturers and distributors of pirate access devices and is not intended to target end-

users of the equipment.  DIRECTV, Inc. v. Albright, No. Civ. A03-4303, 2003 WL 22956416 at

*2 (E.D. Pa. Dec. 9, 2003); Getchel, 2004 WL 1202717 at *3.

This Court has already found that the allegations in the Complaint and evidence submitted

on the issue of damages do not support an inference that Defendant was manufacturing,

assembling, modifying, importing, exporting, selling or distributing pirate access devices and show

only that Defendant was an end-use of these devices.  Accordingly, DIRECTV is not entitled to

damages under Section 605(e)(4). See DIRECTV, Inc. v. Dimas, Civil No. 04-0193 JH/WDS

(D.N.M. Feb. 9, 2005) (Memorandum Opinion and Order, Docket No. 20); DIRECTV, Inc. v.

Guzman, Civil No. 04-0350 MCA/RHS (D.N.M. Aug. 31, 2004) (Memorandum Opinion and

Order, Docket No. 12).

IV.    INJUNCTIVE RELIEF

Injunctive relief to enforce 47 U.S.C. § 605 and 18 U.S.C. § 2511 in the context of a

private civil action is expressly authorized.  See 47 U.S.C. § 605(e)(3)(B)(i); 18 U.S.C. §

2520(b)(1).  DIRECTV's original motion for default judgment asked that the Court permanently

enjoin Defendant from committing or assisting in the commission of any violation of 47 U.S.C. §

605 or 18 U.S.C. § 2511.  In this Court's Memorandum Opinion and Order filed March 28, 2005

[Docket No. 9], the Court deferred ruling on the request for injunctive relief noting that injunctive relief is discretionary and cannot be appropriately awarded without the Court considering evidence on the issue.  DIRECTV's Motion for Entry of Damages Based on Written Submissions does not expressly address the request for injunctive relief.  However, the motion does request any relief the Court deems equitable, just and proper.  Additionally, the evidence submitted by DIRECTV in conjunction with the well-pleaded facts in the Complaint support DIRECTV's request for injunctive relief.  Accordingly, the Court will permanently enjoin and restrain Defendant Kowalski from receiving, possessing, or using a pirate access device or from otherwise committing or assisting in the commission of any violation of 47 U.S.C. § 605 or 18 U.S.C. § 2511.

V.       DIRECTV'S CLAIM FOR CIVIL CONVERSION

DIRECTV's motion for default judgment and motion for entry of damages does not request any separate damages for its claim in Count 4 for Civil Conversion.  The Court concludes that DIRECTV is not seeking separate damages for this claim and will enter a final judgment by default in this matter without awarding additional or separate damages for this claim.

VI.      ATTORNEYS' FEES AND COSTS

Both 47 U.S.C. § 605 and 18 U.S.C. § 2520 contemplate an award of attorneys' fees to an aggrieved party prevailing on a claim based on a violation of either of these statutes. DIRECTV's original motion for default judgment requested an award of attorneys' fees and an award of court costs.  While recognizing that an award of attorneys' fees under Section 605(e)(3)(B)(iii) is mandatory, the Court denied DIRECTV's request without prejudice based on a requirement in the local rules of civil procedure that these requests be made by separate motion. See Docket No. 9 (citing D.N.M.LR-Civ. 54.1 and 54.5).  DIRECTV, to date, has not

resubmitted a request for attorneys' fees by separate motion.  However, attorneys' fees are not part of the compensation for the injury giving rise to the suit, raise legal issues collateral to the merits of the main cause of action, and may properly be determined by post judgment motion. White v. New Hampshire Dept. Of Employment Security, 455 U.S. 445, 451-52 (1982); cf., Osterneck v. Ernst & Whinney, 489 U.S. 169, 175 (1989).  Accordingly, the Court will enter final judgment in this case without deciding the issue attorneys' fees, and DIRECTV may file a post judgment motion for attorneys' fees.  Of course, DIRECTV may also file a separate post judgment motion for costs.

**CONCLUSION**

IT IS THEREFORE ORDERED that Plaintiff's Motion for Entry of Damages Based on Written Submissions [Docket No. 11] is hereby GRANTED IN PART and DENIED IN PART as follows:

1.    Default judgment is entered against Defendant Brian Kowalski in the sum of $7,557.00 plus post-judgment interest as allowed by law to accrue thereon from the date of judgment forward until paid;

2.    Defendant Brian Kowalski is permanently enjoined from receiving, possessing, or using a pirate access device or from otherwise committing or assisting in the commission of any violation of 47 U.S.C. § 605 or 18 U.S.C. § 2511.


_____
UNITED STATES DISTRICT JUDGE